IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KIMBERLY POOLE,<br>*Individually and On Behalf of All Others Similarly Situated*,<br><br>  Plaintiff,<br><br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE CO.,<br><br>  Defendant. | Case No. 1:18-cv-2194<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Kimberly Poole, on behalf of herself and a class of Kentucky residents, brings this claim for damages and injunctive relief against Defendant Progressive Casualty Insurance Co. ("Defendant" or "Progressive"), and in support thereof alleges as follows:

## NATURE OF THE ACTION

1. Progressive Insurance Co. ("Progressive") is the creator of the Snapshot Program, a usage-based automobile insurance program that purportedly allows consumers to lower their automobile insurance rates by sharing their driving patterns and histories with Progressive.

2. Customers who choose to participate in the Snapshot Program are given a small device (the "Snapshot Device" or "Device") that plugs directly into their car and is powered by the car's battery. The Device collects the driver's data, including how often the driver is on the road and for how long, the driver's speed, and sometimes the driver's location, and sends that

information directly to Progressive. Progressive uses the data to calculate an insurance rate that, it claims, is tailored to the driver's own driving habits and risks.

3. However, Progressive fails to warn its customers that, the Snapshot Device is defective. In fact, the Snapshot Device destroys automobile batteries and damages automobile electrical systems, rendering the vehicles and their component parts either totally unusable or diminished in value.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because Plaintiff and the proposed Class members are citizens of a different state from Defendant Progressive. The matter in controversy exceeds the sum or value of $75,000 because the damages incurred by Plaintiff and members of the Class exceed $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## PARTIES

6. Plaintiff, Kimberly Poole, is a citizen of Kentucky who resides at 367 Village Drive, Frankfort, KY 40601.

7. Defendant Progressive is incorporated Ohio and maintains its principal place of business and headquarters in Mayfield Village, Cuyahoga County, Ohio.

## FACTS

**A.     BACKGROUND**

8. In February 2011, Progressive announced the release of the Snapshot Program, a usage-based insurance program. According to Progressive's website, "Snapshot is a program that personalizes your rate based on your ACTUAL driving. It's technically called usage-based

insurance. That means you pay based on how and how much you drive instead of just traditional factors. It's simple. Drive safe and save. Drive extra safe and save more. There are still other factors, and your rate may increase with high-risk driving. But you're in control of what you pay for car insurance, and most drivers earn a discount."

9. Consumers who sign up for the Snapshot Program can choose to use either a mobile app or a plug-in device. Those who choose the plug-in device receive the Snapshot Device, a small device that can fit in the palm of one's hand.

10. The Snapshot Device connects directly to the consumer's vehicle by plugging into the car's OBD-II port, which is usually located under the steering wheel. The Device is powered through the vehicle's battery. It can connect to any vehicle that is a model year 1996 or newer.

11. The Snapshot Device records and sends driving data, including vehicle speed, time information, sudden changes in speed (e.g., hard brakes and rapid accelerations), and the amount the customer drives, directly to Progressive. Progressive uses that information to calculate a participating customer's insurance rate, including potential discounts. If the consumer unplugs the Device from the vehicle, the Device notifies Progressive that it has been unplugged.

12. Drivers can log onto their account on the Progressive website to see trip logs, driving tips, and progress.

13. After Progressive collects driving data for a short period of time, customers may be eligible for insurance at a discounted price.

14. Through Progressive's marketing and advertising, Progressive implies that Snapshot is safe for use in its customers' vehicles. Progressive conveyed and continues to convey this deceptive message through a fully-integrated advertising campaign across a variety of media, including television, newspapers, magazines, direct mail, and the Internet.

15. Instead, the Snapshot Device destroys a vehicle's electrical system and battery, making the vehicle worth less than it would be without a Snapshot Device.

16. When properly installed in a vehicle, the Snapshot Device is continually powered by the vehicle battery. It uses electrical current from a vehicle's battery even when the vehicle is not turned on.

17. Progressive negligently designed and manufactured the Snapshot Device in a manner that it drains the vehicle's battery and causes a vehicle's battery and electrical system to become damaged or nonfunctional, potentially stranding members of the Class and their passengers in unsafe situations, day or night.

18. Progressive fails to properly exert quality control measures to ensure that the Snapshot Device is safe for use in vehicles and to ensure that the Snapshot Device does not cause severe damage to a vehicle and/or its battery.

19. Television commercials for Snapshot air regularly across the country, and have since the Snapshot Program was launched in 2011. The first televised advertisements began in 2011. Progressive's television commercials and other media advertisements imply that Snapshot is safe for use in vehicles and/or fail to disclose that Snapshot can cause harm to a vehicle and/or its battery.[1]

20. Contrary to Progressive's statements about Snapshot being a huge savings to consumers, Snapshot actually increases the costs to consumers by ruining a vehicle's electrical system and draining its battery until it is non-functional.

---

[1] *E.g.,* https://www.ispot.tv/ad/7kas/progressive-snapshot-testimonials (2012 commercial); https://www.ispot.tv/ad/7m79/progressive-snapshot-daily-routine (2015 commercial) (last viewed August 9, 2018).

21. Prior to the distribution of the Snapshot Devices, these harmful and defective products were in Progressive's exclusive possession. According to Progressive, it has extensively researched and tested usage-based insurance devices, including the Snapshot Device. Progressive, therefore, was obligated to disclose to Plaintiff the defective nature of the Snapshot Device.

22. Progressive misrepresented the purported benefits of Snapshot and failed to warn Plaintiff and members of the Class of the defective and harmful nature of the Snapshot Device, namely that it causes severe vehicle battery draining and damage and severe damage to vehicles' electrical systems.

23. By February 2014, Progressive had received over 1,500 customer complaints relating to the effect of the Snapshot Device upon a vehicle's battery, and over 8,000 total complaints about the Devices. Progressive, therefore, knew that the Snapshot Device is defective and damages vehicles and vehicle batteries, yet failed to warn Plaintiff and members of the Class.

**B. PLAINTIFF'S EXPERIENCE WITH THE SNAPSHOT DEVICE**

24. Plaintiff Kimberly Poole is the owner of a 2013 Hyundai Sonata that she purchased in January 2017.

25. In April 2018, Plaintiff enrolled in the Snapshot Program. She chose to use the Snapshot Device relying upon the benefits and representations as explained and advertised by Progressive. After enrolling in the Snapshot Program, Plaintiff received a Snapshot Device from Progressive. She plugged the Snapshot Device into her vehicle, following the instructions provided by Progressive.

26. Plaintiff did not have any electrical or battery problems with her vehicle after her purchase date and before she plugged in the Snapshot Device.

5

27. Plaintiff never removed the Snapshot Device from her vehicle, except when she took the vehicle to the mechanic and the mechanic needed to use the port into which the Snapshot Device plugs, for diagnostic testing. As of the date of filing, the device has been turned off and removed from Plaintiff's vehicle.

28. Plaintiff acted in a diligent and reasonable manner as the owner of a vehicle. Because Progressive concealed the defects of the Snapshot Device from her, she did not suspect (and had no reason to suspect) that there was anything wrong with the Snapshot Device until she began to experience problems with her car.

29. Around the end of April 2018, very soon after Plaintiff plugged in the Snapshot Device, her vehicle battery began to have problems. Specifically, the vehicle will not turn on when she turns the key in the ignition. Instead, the vehicle just makes clicking sounds, like the battery is dead.

30. Sometimes, if Plaintiff lets the car sit for a few minutes and tries again, the car will start on her second attempt. But that does not always work.

31. Plaintiff started carrying a jump box in her car, and frequently has to use the jump box to start the car. Plaintiff is a busy mother of three and with school in session, she cannot afford to have a car that will not start.

32. Plaintiff did not have any problems with the battery or ignition before installing the Snapshot Device. The Snapshot Device caused her battery and ignition to stop working properly.

33. In addition to these issues, after Plaintiff plugged the Snapshot Device into her car, her traction control light began illuminating unexpectedly. When the traction control light illuminates, it means that traction control in the vehicle has become disabled. Nonfunctional

traction control can be unsafe, because traction control helps car wheels gain traction on slippery surfaces.

34. Plaintiff's vehicle did not have problems with the traction control feature automatically disabling before she installed the Snapshot Device. The Snapshot Device caused her vehicle to automatically disable traction control, causing the traction control light to illuminate.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on behalf of herself and the members of a Class defined as follows: all persons residing in the State of Kentucky who used Progressive's Snapshot Device since 2011, or the date of first manufacture, whichever comes first. Excluded from the class are the Judge and counsel in this action,

36. Members of the Class are so numerous that joinder is impracticable. While the exact number of Class members is unknown to Plaintiff, it is believed that the Class is comprised of thousands of members geographically dispersed throughout the State of Kentucky. The Class is readily identifiable from information and records in the sole possession and control of Progressive.

37. Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class members because Progressive has acted on grounds generally applicable to the Class. Such common legal or factual questions include:

   a. Whether the Snapshot Device is defective;

   b. Whether the Snapshot Device is defectively designed and/or manufactured;

   c. Whether the damages caused by the Snapshot Device resulted from Progressive's negligence;

    d. Whether Progressive knew or reasonably should have known about the defects prior to distributing the Snapshot Device to Plaintiff and the Class;

    e. Whether Progressive concealed from and/or failed to disclose to Plaintiff and the Class the problems with the Snapshot Device, including but not limited to the Device's defects and damages that result from using the Device;

    f. Whether Progressive knew or reasonably should have known about the defects after distributing the Snapshot Device to Plaintiff and the Class;

    g. Whether Progressive should be ordered to disgorge part or all of the ill-gotten profits it received from the distribution of the defective Snapshot Devices;

    h. Whether Plaintiff and the Class are entitled to damages and the amount of such damages; and

    i. Whether Progressive should be enjoined from marketing and distributing its defective Snapshot Devices.

38. Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by Progressive's actionable conduct. Plaintiff and all members of the Class used the defective Snapshot Devices. In addition, Progressive's conduct that gave rise to the claims of Plaintiff and the Class members (i.e. delivering a defective Snapshot Device) is the same for all members of the Class.

39. Plaintiff will fairly and adequately protect the interest of the Class because Plaintiff has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.

40. Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

41. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

42. Progressive has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I

### Negligence
### (On Behalf of Plaintiff and the Class)

43. Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

44. Progressive, as a manufacturer and distributor of the Snapshot Device, owes a duty to its customers to use reasonable care in the formulation, design, manufacture, marketing, advertisement, and distribution of its products to ensure that they are safe for use in vehicles without causing damage to those vehicles.

45. Defendant breached its duty as described herein by failing to exercise reasonable care in the formulation, design, manufacture, marketing, advertising, and distribution of the

9

Snapshot Device, which causes damage to a vehicle's battery and electrical system to the point where the vehicle and its battery are rendered non-functional or diminished in value.

46. As a direct and proximate result of Progressive's failure to exercise reasonable care in the formulation, design, manufacture, marketing, advertising, and distribution of the Snapshot Device, Plaintiff and Class suffered damages.

## COUNT II

### Strict Liability
### (On Behalf of Plaintiff and the Class)

47. Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

48. The Snapshot Device was defectively designed, manufactured, tested, assembled, planned, engineered, constructed, built, inspected, and distributed by Progressive. The defective condition of the Snapshot Device rendered the Device unreasonably dangerous to Plaintiff and Class as intended and foreseeable users of the Device.

49. At the time that the Snapshot Device and its components parted the exclusive control of Progressive and was distributed by Progressive to Plaintiff, the Snapshot Device was defective and unreasonably dangerous in that it, without limitation:

    a. Was defective by virtue of a design defect since Progressive designed the Snapshot Device in a way that the Device causes damage to a vehicle's battery and electrical system to the point where the vehicle and its battery are rendered non-functional or diminished in value;

    b. Was defective by virtue of a manufacturing defect since Progressive manufactured the Snapshot Device using inappropriate and inadequate materials that caused the Device

to damage a vehicle's battery and electrical system to the point where the vehicle and its battery are rendered non-functional or diminished in value;

c. Was defective because Progressive inadequately performed quality control, inspections, and testing during the manufacture and assembly of the Snapshot Device when such quality control, inspections, and testing would have determined that the Snapshot Device causes damage to a vehicle's battery and electrical system to the point where the vehicle and its battery are rendered non-functional or diminished in value;

d. Was defective because Progressive knew or should have known of the defective and unreasonably dangerous condition of the Device but still marketed, advertised and distributed the Snapshot Device throughout the United States without adequate warnings of its defective and unreasonably dangerous condition, which, in a foreseeable manner, causes damage to a vehicle's battery and electrical system to the point where the vehicle and its battery are rendered non-functional or diminished in value; and

e. Was defective because Progressive did not adequately warn of the risk to a vehicle's electrical system and battery caused by the Snapshot Device, even though such risk was known or knowable in light of the generally recognized and prevailing best scientific knowledge available at the time of Snapshot's manufacture and distribution.

50. At all times material hereto, Progressive knew or should have known when the Snapshot Device was designed, manufactured, tested, assembled, planned, engineered, constructed, built, inspected, or distributed, that the device and its components would be used without inspection for defects, and that the defects that were present are latent and cannot be discovered by ordinary consumers.

51. Progressive is strictly liable to Plaintiff Class members as foreseeable users for the Snapshot Device's defective and unreasonably dangerous condition and the resulting damages therefrom.

52. As a direct and proximate result of the defective and unreasonably dangerous condition of the Snapshot Device, Plaintiff and Class suffered damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that the Court:

   a. Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

   b. Awards damages, including compensatory, exemplary, and statutory damages, to Plaintiff and Class in an amount to be determined at trial;

   c. Grant restitution to Plaintiff and Class and require Progressive to disgorge its ill-gotten gains;

   d. Permanently enjoin Progressive from engaging in the wrongful and unlawful conduct alleged herein;

   e. Award Plaintiff her expenses and costs of suit, including reasonable attorney's fees to the extent provided by law;

   f. Award pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

   g. Award such further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury in the instant action.

Dated: September 24, 2018

Respectfully submitted,

*/s/Jack Landskroner*

Jack Landskroner (0059227)
Drew Legando (0084209)
Hannah Klang (0090470)
**LANDSKRONER GRIECO MERRIMAN LLC**
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
Tel: (216) 522-9000
Fax: (216) 522-9007
jack@lgmlegal.com
drew@lgmlegal.com
hannah@lgmlegal.com

*/s/Gregory Coleman*

Gregory F. Coleman (*to be admitted pro hac vice*)
Adam Edwards (*to be admitted pro hac vice*)
Mark Silvey (*to be admitted pro hac vice*)
Rachel Soffin (*to be admitted pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-247-0080
Fax: 865-522-0049
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com
mark@gregcolemanlaw.com
rachel@gregcolemanlaw.com

*/s/Hassan A. Zavareei*

Hassan A. Zavareei (*to be admitted pro hac vice*)
Katherine M. Aizpuru (*to be admitted pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW Suite 1000
Washington, DC 20036
(202) 973-0900 (p)
(202) 973-0950 (f)
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

*Attorneys for Plaintiffs*